IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

DELORIS CHAPMAN

VS.                                    CIVIL ACTION NO. 4:07CV80-WAP-DAS

MICHAEL J. ASTRUE,
Commissioner of
Social Security

## MEMORANDUM OPINION

The plaintiff Deloris Chapman brings this action pursuant to 42 U.S.C. § 405(g) to review a final decision of the Commissioner of Social Security Administration denying her application for Disability Insurance Benefits and Supplemental Security Income under the Social Security Act. After considering the arguments made by both the plaintiff and the defendant and considering the evidence in support thereof, the Court finds the ALJ's decision should be affirmed and the case dismissed with prejudice. In support of this decision, the Court finds as follows:

## I. FACTUAL AND PROCEDURAL HISTORY

In the present action, the plaintiff filed applications for a period of disability, disability insurance benefits, and supplemental security income, alleging disability beginning May 26, 1996 and ending September 14, 2000.[1] These applications were denied both initially and on reconsideration, and the plaintiff then requested and plaintiff appeared at two hearings before an ALJ. On December 4, 1998, the ALJ entered an opinion denying the plaintiff's application, and

---

[1]The plaintiff filed a subsequent application for benefits on February 16, 2001, and that application was successful with a disability onset date of September 15, 2000. The initial application – the one at issue here – was initially filed in Illinois, but because the plaintiff has since moved to Belzoni, Mississippi, the case has been transferred to the Northern District of Mississippi.

the United States District Court remanded the case to the ALJ for a consultative psychological evaluation. Following remand and a third hearing, the ALJ, on July 29, 2004 entered a second opinion denying the plaintiff's application. The plaintiff then requested review of the hearing decision, and the Appeals Council denied that request. The plaintiff next filed suit in this Court, and the ALJ's decision is now ripe for review.

The plaintiff was born on June 1, 1960 and was forty-four years old at the time of the final hearing before the ALJ. The plaintiff has a sixth grade education, and she is illiterate. She previously worked as a laborer, cafeteria worker, stocker and child care worker. At the hearing, the plaintiff stated she was disabled and unable to work because she is mentally retarded. Results from a Wechsler Adult Intelligence Scale revealed a verbal IQ of 61, a performance IQ of 59 and a full scale IQ of 56. Nevertheless, after a review and evaluation of the evidence of record and the subjective testimony, the ALJ found the plaintiff not disabled. The ALJ found that prior to September 15, 2000, the plaintiff had the residual functional capacity to perform work-related activities except for work involving complex skilled work. As a result, the ALJ found that prior to September 15, 2000, the plaintiff could perform her past relevant work and was thus not "disabled" as defined in the Social Security Act. The plaintiff objects to these findings, arguing that based on the plaintiff's IQ scores, she meets the Medical Listing found at 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.05 (B).

## II. DISCUSSION

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process.[2] The burden rests upon the plaintiff throughout the first four steps

---

[2]*See* 20 C.F.R. §§ 404.1520, 416.920 (2000).

of this five-step process to prove disability, and if the plaintiff is successful in sustaining her burden at each of the first four levels then the burden shifts to the Commissioner at step five.[3] First, plaintiff must prove she is not currently engaged in substantial gainful activity.[4] Second, the plaintiff must prove her impairment is "severe" in that it "significantly limits her physical or mental ability to do basic work activities . . . ."[5] At step three the ALJ must conclude the plaintiff is disabled if she proves that her impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.02 (1998).[6] Fourth, the plaintiff bears the burden of proving she is incapable of meeting the physical and mental demands of her past relevant work.[7] If the plaintiff is successful at all four of the preceding steps the burden shifts to the Commissioner to prove, considering plaintiff's residual functional capacity, age, education and past work experience, that she is capable of performing other work.[8] If the Commissioner proves other work exists which the plaintiff can perform, the plaintiff is given the chance to prove that she cannot, in fact, perform that work.[9]

### III. STANDARD OF REVIEW

---

[3] *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).

[4] 20 C.F.R. §§ 404.1520(b), 416.920(b) (2000).

[5] 20 C.F.R. §§ 404.1520(c), 416.920(c) (2000).

[6] 20 C.F.R. §§ 404.1520(d), 416.920(d) (2000). If a claimant's impairment meets certain criteria, that claimant's impairments are of such severity that they would prevent any person from performing substantial gainful activity. 20 C.F.R. §§ 404.1525, 416.925 (1998).

[7] 20 C.F.R. §§ 404.1520(e), 416.920(e) (2000).

[8] 20 C.F.R §§ 404.1520(f)(1), 416.920(f)(1) (2000).

[9] *Muse*, 925 F.2d at 789.

This court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner, *Richardson v. Perales*, 402 U.S. 389, 401 (1971), and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (quoting *Consolidated Edison v. NLRB*, 305 U.S. 197, 229 (1938)). The Fifth Circuit has further held that substantial evidence:

> must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found . . . where there is a 'conspicuous absence of credible choices' . . . .

*Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court may not reweigh the evidence, try the case de novo, or substitute its own judgment for that of the Commissioner. *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988), even if it finds that the evidence preponderates against the Commissioner's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell*, 862 F.2d at 475. If the Commissioner's decision is supported by the evidence, then it is conclusive and must be upheld. *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994).

## 1. Mental Retardation

Because the United States Magistrate Judge affirmed the ALJ's initial decision that

the plaintiff's physical impairments were not severe, the only issue before the ALJ at the final hearing was whether the plaintiff was mentally retarded. As mentioned, results from a Wechsler Adult Intelligence Scale revealed a verbal IQ of 61, a performance IQ of 59 and a full scale IQ of 56. Section 12.05 (B) provides:

> *Mental retardation*: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> \*        \*        \*
>
> B.  A valid verbal, performance, or full scale IQ of 59 or less;

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05 (B). It should also be noted that Listing 12.00 (D)(6)© provides that "where more than one IQ is customarily derived from the test administered, e.g., where verbal, performance, and full scale IQ's are provided in the Weschler series, we use the lowest of these in conjunction with 12.05." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(D)(6)©). Consequently, in the present case, the plaintiff's IQ score considered would be 56, landing her squarely within the limits set by § 12.05(B). Such a finding, of course, would entitle the plaintiff to benefits. However, the ALJ found the plaintiff not disabled after considering the IQ tests in conjunction with the additional available evidence.

Specifically, the ALJ found that despite the IQ score, the plaintiff was able to work but could not perform any work-related activities that involved complex skilled work. Because he found the plaintiff's past relevant work as a babysitter, laborer, machine operator, and stocker did not involve complex skilled work, the ALJ found she could perform her past relevant work

5

and was thus not disabled. The issue before the Court is whether the ALJ had sufficient evidence before him to discount the IQ test scores. The Court finds he did.

In his opinion, the ALJ referred specifically to the IQ scores and noted they were consistent with mild mental retardation. However, the ALJ then looked to Dr. Michael Whelan, the consultative examiner's report and noted specifically that Dr. Whelan found the plaintiff had "no limitations in carrying out short simple instructions and only a slight limitation in understanding and remembering short simple instructions." In addition, the ALJ found the plaintiff lacked credibility. For example, the ALJ noted that the plaintiff was not completely forthcoming with respect to her previous employment. The ALJ also noted that following an injury to her hand in 1996, the plaintiff had years to return to the work force and did not do so; this despite an injury that both the ALJ and the Magistrate Judge found to be non-severe. The ALJ also pointed out that the plaintiff has at times had unemployment compensation and workers' compensation related to the injury to her hand. Based on the combination of all these factors, the ALJ found that: "It appears that her impairments are not the cause of her unemployment." Finally, the ALJ looked to the plaintiff's work history and found her past relevant work belied any argument that her IQ scores showed her incapable of employment. The ALJ described her past relevant work as part-time jobs which were suggestive of low intellectual ability, and these were precisely the type jobs he found the plaintiff capable of performing during the relevant time period.

Accordingly, because the ALJ provided explicit reasons for his decision, this Court is persuaded that the ALJ's decision that the IQ tests were invalid is supported by substantial evidence in the record. It is well established that an ALJ may make these type of factual

determinations on the validity of IQ tests. *Pierre v. Sullivan*, 884 F.2d 799, 803 (5th Cir. 1983). In this case, the ALJ considered specifically the plaintiff's IQ scores in conjunction with her work history and the additional factors discussed *supra* and rejected those tests as invalid. *See Johnson v. Bowen*, 864 F.2d 340, 347-48 (5th Cir. 1988). Therefore, absent valid IQ tests, the plaintiff failed to carry the burden of proving disability based on mental retardation.

**Conclusion**

Based on the foregoing, I find that substantial evidence supports the Commissioner's decision that plaintiff was not disabled for purposes of the subject application for benefits. Accordingly, the Commissioner's determination of no disability and the denial of benefits should be affirmed. A final judgment consistent with this opinion will be entered.

**THIS**, the 18th day of September, 2008.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE